UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PATRICIA STRULSON,                                         PLAINTIFF

v.                                CIVIL ACTION NO. 3:15-CV-00828-CRS

CHEGG, INC.,                                           DEFENDANT

<u>Memorandum Opinion</u>

I.      <u>Introduction</u>

Patricia Strulson sued her former employer, Chegg, Inc. ("Chegg"), alleging various employment discrimination claims under federal and Kentucky law. Compl., ECF No. 1. In general, Strulson alleges that Chegg wrongfully terminated her because she had lung cancer. *See, e.g.*, *id.* ¶ 58.

Chegg moves for dismissal for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

The Court will grant in part and deny in part Chegg's motion to dismiss. The Court will dismiss Strulson's claims under the Kentucky Equal Opportunities Act, Family Medical Leave Act, and Employee Retirement Income Security Act, with prejudice.

II.      <u>Legal standard</u>

A plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "does not need detailed factual allegations," but a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Ultimately, the complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Court assumes the veracity of well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* The Court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A "naked assertion" without "further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

A "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits,' and is therefore done with prejudice." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)).

III.   The complaint's factual allegations

The Court assumes the veracity of the following well-pleaded factual allegations:

In December 2008, Chegg hired Strulson and later promoted her to warehouse manager. Compl. ¶¶ 8 – 9. "Six supervisors and thirty-five team leaders reported directly" to her. *Id.* ¶ 11.

"In September 2013, a nodule was found on Plaintiff's lung, which turned out to be cancerous." *Id.* ¶ 12. Her leave from Chegg began on November 15. *Id.* In November 2013, Strulson had surgery to remove the cancer. *Id.* ¶ 14. After the surgery, "she was unable to stand up, walk, drive, or stay awake for eight hours." *Id.* ¶ 15. From November 2013 to May 2014, she had weekly doctor's appointments. *Id.* ¶ 17.

During her leave, Strulson "expressed concern" to human resources manager Tammy Dangerfield "about being terminated from work because she was taking FMLA leave." *Id.* ¶¶ 23 – 24. Dangerfield told Strulson that "it was very expensive for the company to have employees with cancer." *Id.* ¶ 25.

In January 2014, Strulson began chemotherapy, and had four sessions of treatment. *Id.* ¶ 17. On January 20, 2014, Strulson returned to work. *Id.* ¶ 30. She used a golf cart to move around the warehouse. *Id.* ¶ 31.

On April 10, 2014, Strulson "inquired into her available FMLA time because her oncologist scheduled a CT scan of her lung." *Id.* ¶ 36. On April 17, Strulson's doctor "informed her that the CT scan showed something in her other lung (the doctor was not sure, at that point, whether it was more cancer)." *Id.* ¶ 39. On April 18, Strulson told her boss that "something was found in her other lung." *Id.* ¶ 40. The next day, Chegg fired Strulson for "unethical and unprofessional behavior." *Id.* ¶ 44.

Chegg alleged that Strulson engaged in unethical and unprofessional behavior when Strulson hired her husband's company to "perform grounds-keeping services for Chegg at too high a price and in violation of Chegg's ethics policies." *Id.* ¶ 47. Strulson's complaint alleges that contrary to Chegg's allegation of unethical behavior, her husband's company was chosen through a bidding process approved by corporate officers. *Id.* ¶ 48.

Chegg also alleged that Strulson engaged in unethical and unprofessional behavior when she encouraged Chegg to hire a temporary employee who had prior felony convictions. *Id.* ¶ 49. Contrary to Chegg's allegation of unethical behavior, Strulson's complaint alleges that the employee was well-liked, and Strulson was the reason Chegg learned of his criminal record. *Id.* ¶ 50.

Strulson previously filed a complaint against Chegg under her previous name, Foley (the "Previous Complaint"). *See* Compl. 3:14-cv-545. The Previous Complaint alleged violations of the Kentucky Civil Rights Act, Kentucky Equal Opportunities Act, unlawful interference under

3

the Family Medical Leave Act, retaliatory discharge under the Family Medical Leave Act, and unlawful interference under the Employee Retirement Income Security Act. *Id.*

On August 31, 2015, U.S. District Judge David Hale dismissed the Previous Complaint without prejudice. Mem. Op. & Order 13, Aug. 31, 2015 (the "*Foley* opinion"). Judge Hale declined to conclude that her allegations were "fatally defective." *Id.* On November 12, 2015, Strulson filed this complaint, alleging the same causes of action as in the Previous Complaint. *Compare,* Previous Compl. ¶¶ 22 – 47, *with* Compl. ¶¶ 51 – 97.

IV. Whether the Court should dismiss Strulson's complaint under the law of the case doctrine

The Court will first address Chegg's argument that the Court should dismiss Strulson's complaint with prejudice under the law of the case doctrine. *See* Def.'s Mem. Supp. Mot. Dismiss 5 – 8, ECF No. 5-1.

Chegg argues, "Judge Hale's well-reasoned decision dismissing this action previously for failure to state a claim upon which relief may be granted controls where no [new] material allegations have been made to the instant Complaint." *Id.* at 5. The Court disagrees.

None of the cases on which Chegg originally relied apply to the procedural posture presented here: when a plaintiff files a new complaint after a federal court in the same district dismissed a previous complaint without prejudice for failure to state a claim. *See Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005) (discussing law of the case doctrine as preventing relitigation of an issue after a judgment on the merits); *In Re Kenneth Allen Knight Tr.*, 303 F.3d 671, 677 – 78 (6th Cir. 2002) (discussing law of the case doctrine applying to preclude relitigating issue decided by previous appeal); *Hanover Ins. Co. v. Am. Eng. Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (discussing law of the case doctrine in context of implementing court of

appeals mandate); *Bench Billboard Co. v. City of Covington, Ky.*, 547 F.App'x 695, 703 – 04 (6th Cir. 2013) (discussing law of the case doctrine in context of binding parties to findings of fact and conclusions of law by an appellate court).

In its reply, Chegg accuses Strulson of "litigation gamesmanship" because she did not move to amend the Previous Complaint in the previous case and instead filed this complaint following the dismissal without prejudice. Def.'s Reply 3, ECF No. 16. However, the cases on which Chegg relies are unpersuasive. *See Musleh v. State Farm Fire & Cas. Co.*, 2013 WL 1759111 *1, *2 (E.D. Mich. 2013) (finding that law of the case applied because plaintiffs did not move for reconsideration to challenge previous ruling); *Baker v. Snyder*, 2006 WL 2645163 *1, *2 (E.D. Tenn. 2006) (finding that law of the case applied because plaintiff filed an "almost identical complaint to the one in this action"); *Sylvester Material, Inc. v. John Carlo*, Inc., 2005 WL 3484131 *1, *1 n.1 (N.D. Oh. 2005) (finding that the law of the case applied because the "grounds asserted in Defendants' motions are materially identical to those considered and ruled upon by Judge Dowd").

The court of appeals cautions district courts to apply the law of the case doctrine with "common sense." *Hanover*, 105 F.3d at 312. Here, the Previous Complaint was five pages long with larger font, and this complaint is eleven pages long with smaller font. This complaint alleges many factual allegations the Previous Complaint did not have. *See, e.g.*, Compl. ¶¶ 15 – 19; 21 – 29; 47 – 50. Even if the Court accepted Chegg's argument that the law of the case applies if a plaintiff alleges the same material allegations in a new complaint in a new case, this complaint is a materially different document than the Previous Complaint.

The Court will not apply the law of the case doctrine to determine the sufficiency of this complaint.

    V.    <u>Whether Strulson's complaint states a claim to relief that is plausible on its face</u>

Counts I and II of the complaint allege wrongful termination disability discrimination under the Kentucky Civil Rights Act and Kentucky Equal Opportunities Act. Compl. ¶¶ 51–70. Counts III and IV allege unlawful interference and retaliatory discharge under the Family Medical Leave Act. *Id.* ¶¶ 71–87. Count V alleges unlawful interference under the Employee Retirement Income Security Act. *Id.* ¶¶ 88–97. The Court will address each in turn.

    A.  <u>Strulson's wrongful termination claim under the Kentucky Civil Rights Act</u>

The Kentucky Civil Rights Act prohibits an employer from firing an individual "because the person is a qualified individual with a disability." Ky. Rev. Stat. § 344.040(1)(a). Kentucky courts interpret the Kentucky Civil Rights Act consistent with the federal Americans with Disabilities Act. *James v. James Marine, Inc.*, 805 F.Supp.2d 340, 346 n.1 (W.D. Ky. 2011).[1]

Judge Hale previously discussed how "Foley's complaint fails to plead any facts to support her claim that Chegg perceived her as being substantially limited in the performance of a major life activity." *Foley* Op. 4. In her previous response to the motion to dismiss, Strulson conceded that she had not plead discrimination on the basis of an actual disability. *See id.*

A disability is: "with respect to an individual: (a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." Ky. Rev. Stat. § 344.010. "Major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003).

---

[1] The complaint does not allege a cause of action under the Americans with Disabilities Act, nor does it allege a cause of action for retaliation under the Kentucky Civil Rights Act.

Chegg argues that Strulson failed to plead that her lung cancer was a physical or mental impairment that substantially limited one or more major life activities. Def.'s Mem. 10 – 13. Chegg also argues that Strulson failed to plead sufficient facts to support that Chegg regarded her as disabled. *Id.* at 13 – 16. Neither party has presented argument regarding whether the complaint sufficiently alleges that Strulson had a disability because she had a record of a physical impairment that substantially limits one or more major life activities. *See* Ky. Rev. Stat. § 344.010.

Strulson does not have to establish a prima facie case to overcome a motion to dismiss for failure to state a claim. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). Rather, the complaint "must allege sufficient factual content, from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that Chegg discriminated against her because of her disability. *Id.*

The complaint alleges that after her surgery, Strulson "was unable to stand up, walk, drive, or stay awake for eight hours." Compl. ¶ 15. Her chemotherapy began in January 2014, and "The chemotherapy made Plaintiff very sick and caused her to be stuck in the bed and sleeping most days." *Id.* ¶ 18. After January 20, when she "was released to return to work with certain limitations." *Id.* ¶ 30. "Upon her return to work, Plaintiff could no longer walk around the warehouse due to her surgery, but instead used a golf cart." *Id.* ¶ 31. It further says, "Plaintiff's lung cancer caused her to be unable to stand or walk for a period of time." *Id.* ¶ 55. These factual allegations sufficiently allege that Strulson's lung cancer was a disability because it substantially limited the major life activities of standing and walking.

Human resources manager Tammy Dangerfield "informed Plaintiff that it was very expensive for the company to have employees with cancer." *Id.* ¶ 25. In April 2014, "Plaintiff

inquired into her available FMLA time because her oncologist scheduled a CT scan of her lung." *Id.* ¶ 36. Strulson told her boss that "something was found on her other lung." *Id.* ¶ 57. It is reasonable to infer from these allegations that Chegg regarded Strulson has having a disability because Chegg knew of her previous diagnosis and treatment for lung cancer only a few months before Strulson told her boss that the doctor found "something" in her other lung.

Strulson's disability discrimination claim for wrongful termination under the Kentucky Civil Rights Act alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Court will deny Chegg's motion to dismiss as to Count I of the complaint.

### B. Strulson's claim under the Kentucky Equal Opportunities Act

The Kentucky Equal Opportunities Act prohibits an employer from discriminating against an "individual with a disability … because of the person's disability unless the disability restricts that individual's ability to engage in the particular job or occupation for which he or she is eligible." Ky. Rev. Stat. § 207.150(1). The Kentucky Equal Opportunities Act defines "physical disability" as the "physical condition of a person whether congenital or acquired, which constitute a *substantial disability* to that person and is demonstrable by medically accepted clinical or laboratory diagnostic techniques." *Id.* § 207.130(2) (emphasis added).

Chegg argues that Strulson's claim under the Kentucky Equal Opportunities Act fails to state a claim because Strulson has not alleged sufficient facts to suggest a "substantial disability" under that Act. Def.'s Mem. 16 – 17.

In the previous opinion, Judge Hale said, "There is limited case law interpreting the KEOA's definition of 'disability.' Nonetheless, the KEOA's definition of disability appears to be more restrictive than the KCRA." *Foley* Op. 6. Strulson concedes that the definition of

8

disability under the Kentucky Equal Opportunities Act is "more restrictive" than the definition of disability under the Kentucky Civil Rights Act. Pl.'s Resp. Opp. Mot. Dismiss 14, ECF No. 15.

The complaint says, "Plaintiff's lung cancer constituted a substantial physical disability to her." Compl. ¶ 67. This "naked assertion" without "further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The Court will dismiss Count II of the complaint for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

C. <u>Strulson's claim for interference under the Family Medical Leave Act</u>

The entitlement, or interference, theory of the Family Medical Leave Act makes it "unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights, and which require the employer to restore the employee to the same or an equivalent position upon the employee's return." *Bryson v. Regis. Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (internal quotation marks and citations omitted).

Under the FMLA, an employer "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4). "An eligible employee is an employee of a covered employer who … [i]s employed a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 C.F.R. § 825.110(a). A serious health condition is an "illness, injury, impairment or physical or mental condition that involves … continuing treatment by a health care provider." *Id.* § 825.113(a).

Chegg argues that Strulson failed to allege enough facts to suggest that she was an eligible employee and that Chegg was a covered employer. Def.'s Mem. 18 – 19.[2]

Judge Hale previously said that Strulson's claims that she had "scheduled a CT scan" and that "something was recently found in her other lung" did "not support an inference that her condition would involve inpatient care, continuing treatment, or would render her unable to perform the functions of her job." *Foley* Op. 8.  The complaint reiterated these same facts. The complaint did not fix these deficiencies beyond the assertion that Strulson's "serious medical condition was lung cancer." Compl. ¶ 74. This is a legal conclusion to which the Court owes no deference.

Judge Hale also previously rejected Strulson's claim that Chegg "is a covered employer under the FMLA" as a legal conclusion without factual support. The complaint reiterates this legal conclusion, to which the Court owes no deference. The complaint says further: "Defendant employed more than fifty employees during 2013 and 2014." Compl. ¶ 76. This "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. This bare recitation also fails to address whether the fifty employees worked within seventy-five miles of Chegg's Shepherdsville warehouse.

The complaint adds one other sentence to support Strulson's eligibility for FMLA leave: "Six supervisors and thirty-five team leaders reported directly to Plaintiff." Compl. ¶ 11. At most, if the Court includes Strulson in the count, the face of the complaint alleges that Chegg had forty-two employees, short of the required fifty-employee threshold. This is insufficient to allege eligibility for leave under the FMLA.

---

[2] Chegg also argues that Strulson failed to allege her entitlement to FMLA leave, that she gave notice of her intent to take leave, and that Chegg denied leave. *See* Def.'s Mem. 20 – 24. The Court need not address these arguments.

Strulson argues that is reasonable to infer from the use of the word "leaders" that the thirty-five team leaders at Chegg led other employees, and the forty-two employees mentioned in the complaint (including Strulson herself) were not the only employees within seventy-five miles.³ The Court declines Strulson's unsupported invitation to add an employee for every "team leader" mentioned in the complaint. See Pl.'s Resp. Opp. Mot. Dismiss 20 n.107.

Altogether, the complaint fails to allege enough facts to suggest that Strulson's eligibility for leave under the FMLA. The complaint lacks facts sufficient to allege Strulson had a serious health condition, and it lacks facts sufficient to allege that Chegg is a covered employer.

The Court will dismiss Count III of the complaint for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### D. Strulson's claim for retaliatory discharge under the Family Medical Leave Act

The Court incorporates its analysis from Part IV(C). As discussed above, the complaint fails to allege sufficient facts to suggest Strulson's eligibility for FMLA leave. For the same reasons, Strulson's claim for retaliatory discharge under the FMLA does not suffice.

The Court will dismiss Count IV of the complaint for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### E. Strulson's claim for interference under the Employee Retirement Income Security Act

Judge Hale previously discussed how a plaintiff alleging that he was fired because the company no longer wanted to pay his expensive health benefits failed to state a claim for unlawful interference under Employee Retirement Income Security Act. See *Foley* Op. 12.

---

³ Although Chegg replies that "at relevant times, it did not have more than fifty (50) regular employees at its Kentucky location," Def.'s Reply 10, the statute does not use the word "regular" to distinguish between types of employees, and Chegg has not clarified whether its temporary employees worked twenty or more weeks of the year. See 29 U.S.C. § 2611(4).

The complaint adds the following allegations: "Plaintiff received health benefits from Defendant employer." Compl. ¶ 90. The complaint adds:

> Based upon statements and representations by Defendant's agents, and the close temporal proximity between her illness and termination, as set forth in the facts above, Plaintiff's termination was due to her illness and motivated by Defendant's expenditure of substantial medical expenses and/or by Defendant's expectation that Plaintiff would continue to incur substantial medical expenses, and further motivated by Defendant's fear of increased insurance premiums.

*Id.* ¶ 94. Additionally, "Ms. Dangerfield informed Plaintiff that it was very expensive for the company to have employees with cancer." *Id.* ¶ 25. These bare allegations fail to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Court will dismiss Count V of the complaint for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## VI. Conclusion

The Court will grant in part and deny in part Chegg's motion to dismiss. The Court will deny Chegg's motion to dismiss as to Count I. The Court will grant Chegg's motion to dismiss as to Counts II through V.

The Court will dismiss Strulson's claims under the Kentucky Equal Opportunities Act (Count II), Family Medical Leave Act (Counts III and IV), and Employee Retirement Income Security Act (Count V), with prejudice.

The Court will enter an order in accordance with this opinion.

May 31, 2016

**Charles R. Simpson III, Senior Judge
United States District Court**