UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:15-cv-00828

PATRICIA STRULSON,                                                                    PLAINTIFF

v.

CHEGG, INC.,                                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Motion by Plaintiff Patricia Strulson ("Plaintiff") to Reconsider the previous Memorandum Opinion and Order dismissing four of the five claims she has brought against her former employer, Chegg, Inc. ("Defendant"). [DN 34.] Defendant has responded, [DN 36], and Plaintiff has replied. [DN 40.] This matter is ripe for adjudication. For the following reasons, Plaintiff's Motion is **GRANTED.**

**I. Factual Background & Procedural History**

The following factual background is taken from Plaintiff's Complaint. [DN 1.] Plaintiff was hired by Defendant in 2008 and was later promoted to the position of warehouse manager in 2009. [*Id.* at 2.] "In September 2013, a nodule was found on Plaintiff's lung, which turned out to be cancerous." [*Id.*] In November of the same year, "Plaintiff went on leave under the Family and Medical Leave Act (FMLA)…to have surgery for removal of the cancerous nodule, lymph nodes, and lower lobe of her lung." [*Id.*] Thereafter, Plaintiff "was unable to stand up, walk, drive, or stay awake for eight hours. In January Plaintiff began chemotherapy." [*Id.* at 3.] Plaintiff "underwent four sessions of chemotherapy, twenty-one days apart and had doctor's appointments every week from November 2013 to May 2014. The chemotherapy made Plaintiff very sick and caused her to be stuck in the bed and sleeping most days." [*Id.*] "Throughout the

relevant time period…, Defendant was aware of Plaintiff's diagnosis, treatment, and condition…." Plaintiff's Complaint indicates that, while she was out of the office due to chemotherapy, she stayed in contact with work personnel and worked at least some of the time. [*Id.*]

"Plaintiff expressed concern to Ms. [Tammy] Dangerfield [an employee in Defendant's human resources department] about being terminated from work because she was taking FMLA leave. Ms. Dangerfield informed Plaintiff that it was very expensive for the company to have employees with cancer." [*Id.* at 3-4.] Although Plaintiff continued to see her doctor every week, "[o]n January 20, 2014, Plaintiff was released to return to work with certain limitations. Upon her return to work, Plaintiff could no longer walk around the warehouse due to her surgery, but instead used a golf cart." [*Id.*] After her return to work, Plaintiff was transferred from her previous position to the position of "projects manager," although her previous position was not eliminated, and "was filled by an employee who had less seniority within the company, but who did not have the same or similar health issues as Plaintiff." [*Id.*]

"On April 10, 2014, Plaintiff inquired into her available FMLA time because her oncologist scheduled a CT scan of her lung," and "she wanted to be prepared for potentially having more surgery or other cancer treatment like she did before. At that time (April 2014), Plaintiff did in fact have more FMLA time available." [*Id.* at 5.] "On April 17, 2014, Plaintiff's doctor informed her that the CT scan showed something in her other lung (the doctor was not sure, at that point, whether it was more cancer). On April 18, 2014, Plaintiff told her boss, Eric Williams, that something was found in her other lung." [*Id.*] One day later, on April 19, 2014, "Defendant terminated Plaintiff from her employment under the pretext of alleged unethical and unprofessional behavior." [*Id.*] Defendant's stated reason for terminating Plaintiff's employment

at Chegg was that Plaintiff had hired her husband's grounds-keeping business to perform certain work on Defendant's premises "at too high a price and in violation of Chegg's ethics policies." [*Id.* at 6.] Plaintiff states in her Complaint, though, that "the retention of Plaintiff's husband's company was implemented through a bidding process approved by [Defendant's] owner in 2010, Director of Operations in 2011 and 2012, and Vice President of Operations in 2013…." [*Id.*] A second reason given by Defendant for Plaintiff's termination "was that she allegedly encouraged Chegg to hire a temporary maintenance worker who had felony convictions, demonstrating a total disregard for the best interests of the company and its hiring processes." [*Id.*] Plaintiff states in her Complaint that the employee in question was well-liked and that Williams and Dangerfield were both aware of his criminal history. [*Id.*]

Plaintiff had previously filed a complaint against Defendant in 2014. [*See* Compl. 3:14-cv-545.] This complaint "alleged violations of the Kentucky Civil Rights Act, Kentucky Equal Opportunities Act, unlawful interference under the Family Medical Leave Act, retaliatory discharge under the Family Medical Leave Act, and unlawful interference under the Employee Retirement Income Security Act." [DN 19.] This complaint was dismissed by United States District Judge David Hale without prejudice. Therein, Judge Hale noted that he "declined to conclude that her allegations were fatally defective." [*Id.*] In November 2015, Plaintiff filed the instant Complaint, asserting the same five claims listed above. [*See* DN 1.]

Before this case was transferred to this Court, four of Plaintiff's five claims were dismissed for a failure to state a claim upon which relief can be granted in a Memorandum Opinion and Order dated June 1, 2016. [DN 19.] This decision will be discussed more fully in the "Discussion" section below. On November 1, 2016, in the interests of judicial economy and to equalize the docket, this case was transferred to this Court, [DN 26], and on September 29,

2017, Plaintiff filed the instant Motion, asking this Court to reconsider the previous ruling dismissing four of her five claims. [DN 34.]

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Importantly, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir. 1999). Thus, "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion should be denied. *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means that the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The concept of "plausibility" denotes that a complaint should contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. The element of plausibility is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But where the court is unable to "infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks omitted).

**B. Reconsideration Standard**

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Leelaneu Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. 2004) (explaining that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). Indeed, pursuant to Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised *at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added). As the Sixth Circuit instructed in *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009), "courts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law;

(2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted).

### III. Discussion

In the previous Memorandum Opinion, [DN 19], Defendant's Rule 12(b)(6) motion was denied as to Count One of Plaintiff's Complaint, the Kentucky Civil Rights Act claim. As such, in this Court's reconsideration analysis of the previous ruling, it will focus on the four claims previously dismissed. Defendant does not claim, in response to the instant Motion by Plaintiff, that the denial of its motion to dismiss the Kentucky Civil Rights Act claim should be reconsidered and the Court declines to do so *sua sponte*.

#### A. Time Limitations

As an initial matter, this Court finds it prudent to address one of Defendant's principle arguments as to why Plaintiff's instant Motion should be denied in its entirety, and Defendant should be awarded attorney's fees for having to respond. Defendant hones in on the admittedly long period of time in between the initial ruling on Defendant's Rule 12(b)(6) motion and the instant Motion for Reconsideration. To be exact, four of Plaintiff's five claims were dismissed with prejudice in a Memorandum Opinion dated June 1, 2016. [DN 19.] Plaintiff's instant Motion was filed September 29, 2017. [DN 34.] By Defendant's count, that amounts to a lapse of 485 days. [DN 36, at 1.] To be sure, that is a considerable amount of time. Plaintiff's Motion references various incidents that may have caused, at least in part, the delays: one of Plaintiff's counsel apparently gave birth during the interim period, and another of Plaintiff's counsel ran for political office. [DN 34-1, at 2 n. 6.]

Irrespective of the personal matters which took precedence over this case, the Court finds that the delay, although quite long, is insufficient in and of itself to prevent this Court from

undertaking a substantive analysis of the merits of Plaintiff's instant Motion. Defendant gives considerable weight to this delay, but the Court is not persuaded that, simply due to a perceived lack of diligence on the part of Plaintiff's counsel, she should be automatically prejudiced without consideration of the merits of her argument. Additionally, there is no time limitation placed upon the Court with respect to the reconsideration of interlocutory orders. As Rule 54(b) explains, the Court may reconsider its position "*at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added). Indeed, the Sixth Circuit Court of Appeals has upheld a District Court's *sua sponte* decision to reconsider its grant of partial summary judgment 184 days after entry of an interlocutory order. *See Leelanau Wine Cellars,* 118 F. App'x at 946 (explaining that "the district court had authority to reconsider and modify its previous August 13, 2002 order" on February 14, 2003.). The time-lapse here is much longer than the one in *Leelanau Wine Cellars*, but the same principle holds true here as did there. Thus, Plaintiff's Complaint, and not the time delay, will guide this Court's decision.

**B. Kentucky Equal Opportunities Act Claim**

The first claim previously dismissed by the Court is Plaintiff's Kentucky Equal Opportunities Act ("KEOA") claim. "The KEOA prohibits an employer from discriminating against an employee because of a disability." *Baum v. Metro Restoration Servs., Inc.*, 240 F. Supp. 3d 684, 696 (W.D. Ky. 2017) (citing KRS 207.150(1)). Pursuant to KRS 207.130(2), "'physical disability' means the physical condition of a person whether congenital or acquired, which constitutes a substantial disability to that person and is demonstrable by medically accepted clinical or laboratory diagnostic techniques." "There is little Kentucky case law interpreting the KEOA's definition of a person with a disability." *Baum*, 240 F. Supp. 3d at 696.

Importantly though, "[t]he KEOA's definition of a person with a disability appears to be more restrictive than the definition of an individual with a disability under the [Kentucky Civil Rights Act.]" *Id.* (citations omitted). Indeed, "[i]n *Whitlow v. Kentucky Manufacturing Co.*, [762 S.W.2d 808, 809 (Ky. Ct. App. 1988),] the Kentucky Court of Appeals held that the KEOA's definition of a person with a disability only encompasses physical impairments." *Id.*

The previous decision of the Court dismissing this claim focused on a perceived failure by Plaintiff to allege sufficient facts that suggest a "substantial disability" under the KEOA. [DN 19, at 8-9.] It was decided that the statement that "Plaintiff's lung cancer constituted a substantial physical disability to her" was a "naked assertion" that, without "further factual enhancement," did not suffice to state a claim upon which relief could be granted. Respectfully, the Court now reverses that decision, as it finds, upon reexamination, ample facts laid out in the Complaint to establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In her Complaint, Plaintiff lays out additional facts that, taken as true, are more than sufficient to satisfy Rule 12(b)(6)'s standard. Specifically, in Paragraph 63 of the Complaint, the first paragraph of her KEOA claim, Plaintiff incorporated by reference the previous sixty-two paragraphs, many of which detail what Plaintiff characterizes as a "substantial physical disability," as required by the statutory provisions. [DN 1, at 8.] Indeed, in addition to the assertion that lung cancer constitutes a substantial physical disability, [*id.*], Plaintiff also provides specific examples of how this is the case: "[a]fter Plaintiff's surgery [to remove a cancerous nodule from her lung], she was unable to stand up, walk, drive, or stay awake for eight hours." [*Id.* at 3.] Also, "[t]he chemotherapy made Plaintiff very sick and caused her to be stuck in the bed and sleeping most days. [*Id.*] Further, "[u]pon her return to work, Plaintiff could no longer walk around the warehouse due to her surgery, but instead used a golf cart." [*Id.* at 4.]

These factual allegations, combined with her assertion that her lung cancer did, in fact, constitute a substantial physical disability to her, is more than sufficient to survive dismissal at such an early stage in the litigation.

Defendant's principle argument in support of its Response to the instant Motion is that, at base, Plaintiff's lung cancer does not constitute a substantial physical disability. [*See* DN 36, at 6-7.] Defendant characterizes Plaintiff's cancer as a series of "temporary physical challenges," which she overcame. [*Id.*] Defendant further argues that Plaintiff "worked without incident for months before Chegg determined to terminate her employment." [*Id.*] This oversimplifies what is a complicated issue. To be sure, Plaintiff returned to work in January 2014 and worked until April 2014 when she was terminated. However, she was still going to doctor's appointments every week concerning her cancer, and the day before she was fired she had informed her boss that she may have had cancer again. Defendant's argument also ignores the fact that Plaintiff could not move around and required a golf cart to effectively do her job.

In sum, the Court, upon reconsideration, has determined that it would work a manifest injustice to dispense with the KEOA claim at such an early juncture in the case. As the Supreme Court noted in *Twombly*, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555. This Court is satisfied that Plaintiff has done more than this here, and as such, reinstates her KEOA claim against Defendant.

### C. FMLA Interference Claim

Plaintiff's second claim that was previously dismissed is her claim for unlawful interference under the FMLA. [DN 1, at 8; 19, at 9.] As the Court previously stated, "[t]he entitlement, or interference, theory of the Family Medical Leave Act makes it 'unlawful for

employers to interfere with or deny an employee's exercise of her FMLA rights, and which require the employer to restore the employee to the same or an equivalent position upon the employee's return.'" [DN 19, at 6 (quoting *Bryson v. Regis. Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (internal quotation marks and citations omitted).] Pursuant to the FMLA, an employer is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4). "An eligible employee is an employee of a covered employer who…[i]s employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 C.F.R. § 825.110(a)(3). And pursuant to 29 C.F.R. § 825.113(a), a "serious health condition entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115."

The two principle problems the Court previously found with respect to this claim are as follows: first, "[t]he complaint lack[ed] facts sufficient to allege Strulson had a serious health condition," and second, that "it lack[ed] facts sufficient to allege that Chegg is a covered employer" under the FMLA. [DN 19, at 11.] Upon reexamination of Plaintiff's Complaint in its entirety, it has become clear to the Court that this claim must be reinstated. Plaintiff's detailed factual section regarding her lung cancer, the surgery to remove the nodule, the resulting chemotherapy, and the weekly doctor appointments provides this Court with ample information to conclude that she has sufficiently alleged a "serious health condition" as required under 29 C.F.R. § 825.113(a). She even explained the four rounds of chemotherapy and the regular doctor's appointments, indicating "continuing treatment by a heath care provider." *See id.*

With respect to the question of whether Plaintiff sufficiently alleged that Defendant was a covered employer under the meaning of the FMLA, the Court also finds upon reexamination that there are sufficient facts presented, so as to render the Court's previous ruling clear error and warranting reversal. It is axiomatic that the Court is required to construe the allegations in the light most favorable to the plaintiff at the 12(b)(6) stage, "and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir, 2008); *see also Keenan v. Marker*, 23 F. App'x 405, 406 (6th Cir. 2001) ("In determining whether a complaint fails to state a claim, the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts…that would entitle him to relief.").

To be sure, Plaintiff's legal conclusion that Defendant is a covered employer under the FMLA is entitled to no deference from this Court. However, drawing all reasonable inferences in favor of Plaintiff here, she has alleged a set of facts that could entitle her to relief and, as a result, preclude dismissal at this juncture. Specifically, Plaintiff explains, at length, her FMLA history while employed by Defendant: "[o]n November 15, 2013, Plaintiff went on leave under the Family and Medical Leave Act…to have surgery for removal of the cancerous nodule, lymph nodes, and lower lobe of her lung." She further explains that she "was even called into work for a meeting while on FMLA leave," and that she was in constant contact with her subordinate, Gabriel Whitehouse, "while she was on FMLA leave." [DN 1, at 3.] Additionally, she notes that "[w]hile [she] was on FMLA leave she stayed in contact with Defendant's human resources manager," and that she "expressed concern to Ms. Dangerfield about being terminated from work because she was taking FMLA leave." [*Id.*] Next, Plaintiff alleges that while she "was on

FMLA leave, human resources manager, Elizabeth Ellenstein reminded Plaintiff at least once a week how many days of FMLA leave she had left." [*Id.* at 4.] Plaintiff mentions her FMLA leave in five additional paragraphs in her "Facts" section. Of particular importance is her factual allegation that "[o]n April 10, 2014, Plaintiff inquired into her available FMLA time because her oncologist scheduled a CT scan of her lung," and that "Plaintiff did in fact have more FMLA time available." [*Id.* at 5.] From this, it has become clear to the Court that to proceed without this claim would be clear error, and so it reinstates this claim now.

### D. FMLA Retaliatory Discharge Claim

Consistent with this Court's decision to reinstate Plaintiff's FMLA interference claim, the FMLA retaliatory discharge claim must also be reinstated. The Court incorporates its FMLA analysis into this section finding that Plaintiff has presented more than sufficient factual allegations that Defendant was a "covered employer" under the meaning of the FMLA. The Court had previously found that Plaintiff had *not* articulated sufficient facts to show Defendant was a "covered employer" under the FMLA, which was the basis for dismissing this claim in the first place. But, upon reconsideration, it has become clear to the Court that Plaintiff's "Facts" section shows that Defendant was a covered employer. Consequently, dismissing this claim at this stage in the litigation constituted clear error by the Court, and one which it now rectifies by reinstating.

### E. ERISA Interference Claim

Plaintiff's final claim which was previously dismissed by the Court is one for unlawful interference with ERISA. [*See* DN 1, at 10-11.] Pursuant to 29 U.S.C. § 1140, "[i]t shall be unlawful for any person to discharge…a participant or beneficiary for exercising any right to which he [or she] is entitled under the provisions of an employee benefit plan…." The Sixth

12

Circuit has instructed that, in order to establish a prima facie case, a plaintiff must show "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992) (internal quotation marks and citations omitted). Additionally, the "plaintiff 'must show that an employer had a specific intent to violate ERISA.'" *Id.* (quoting *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991)). Importantly though, "[t]he plaintiff is not required to show that the employer's sole purpose in discharging him was to interfere with his pension benefits, but rather that it was 'a motivating factor' in the decision." *Id.* (quoting *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991), *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238 (4th Cir. 1991), *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988), and *Titsch v. Reliance Grp., Inc.*, 548 F. Supp. 983 (S.D.N.Y. 1982), *aff'd*, 742 F.2d 1441 (2d Cir. 1983)).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant "to introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged action." *Humphreys*, 966 F.2d at 1043 (internal quotation marks and citations omitted). If the defendant cannot do this, "judgment should then be rendered for the plaintiff," but if the defendant "successfully asserts a legitimate reason for its actions, then the presumption of wrongful action drops from the case, and the plaintiff must either prove that the interference with pension benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff articulated the following factual allegations in her Complaint: "Plaintiff was a participant or beneficiary pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140," that "Plaintiff received health benefits from Defendant employer,"

that "Defendant was an employer pursuant to ERISA," that "Plaintiff's medical conditions caused substantial medical bills to be incurred," and that "Defendant shared the cost of Plaintiff's health benefit plan." [DN 1, at 10-11.] Plaintiff goes on to allege that, "[b]ased upon statements and representations by Defendant's agents, and the close temporal proximity between her illness and termination…, Plaintiff's termination was due to her illness and motivated by Defendant's expenditure of substantial medical expenses and/or by Defendant's expectation that Plaintiff would continue to incur substantial medical expenses, and further motivated by Defendant's fear of increased insurance premiums." [*Id.* at 11.] Plaintiff further alleges that "Defendant's actions were intentional and interfered with Plaintiff's protected rights under ERISA Section 510." [*Id.*] Plaintiff then details the damages she has allegedly suffered due to Defendant's actions.

While the Court initially viewed Plaintiff's above allegations as bare and held that she had failed to allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, the Court in its discretion now reverses that decision and reinstates this claim. Plaintiff has alleged facts, laid out above, that go to each and every element of an ERISA interference claim, which, if held to be true, state a claim upon which relief can be granted. This precludes the dismissal of this claim. She alleges that Defendant engaged in "prohibited employer conduct" when it fired her for unlawful reasons; and she alleges that Defendant's action was "taken for the purpose of interfering," at least in part, with the exercise of employee benefits to which she was entitled. *See Humphreys*, 966 F.2d at 1043. It is a reexamination of the applicable case law, which details exactly what is required of a plaintiff, coupled with the Rule 12(b)(6) standard, that leads this Court to conclude that its previous ruling was clear error, thus requiring reversal.

## IV. Pending Summary Judgment Motions & Case Schedule

This Motion for Reconsideration [DN 34] was filed September 29, 2017, the same day that both parties moved for summary judgment. [*See* DN 33, DN 35.] The Court is cognizant of the fact that, as a result of its ruling in this Memorandum Opinion and Order, the case and briefing schedules will need to be adjusted accordingly. The Court is also sensitive to the fact that its ruling today presents some prejudice to Defendant, in that it had proceeded to this juncture in the case assuming that the four above claims had been dismissed and were no longer at issue. However, the prejudice to Defendant is not undue, for the Court has decided that, in the interests of preventing a manifest justice, these claims must be reinstated and litigated. It would be clear error not to do so.

Because of this Court's ruling, both pending motions for summary judgment will be dismissed without prejudice, and the parties shall have leave to refile them once further discovery is conducted with respect to the four above claims. Thereafter, both parties may again move for summary judgment at an appropriate time.

## V. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Reconsideration [DN 34] is **GRANTED.** Her claims for a violation of the KEOA, unlawful FMLA interference, FMLA retaliatory discharge, and unlawful ERISA interference are hereby reinstated.

2. Defendant's claim for attorney's fees incurred in responding to Plaintiff's Motion is **DENIED.**

3. Plaintiff's Motion for Summary Judgment [DN 35] and Defendant's Motion for Summary Judgment [DN 33] are both hereby **DISMISSED WITHOUT PREJUDICE**. The

parties have leave to refile such motions at an appropriate time, and after further discovery is conducted.

4. All case deadlines and the date set for a jury trial are **HEREBY VACATED.** A new case and briefing schedule will be set by the Court in a **status/scheduling telephonic conference**, which will be held on **January 5, 2018 at 10:00 Eastern Standard Time**. **The Court will place the call.**

**IT IS SO ORDERED.**

cc: Counsel of Record